**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

ROBERT FERNANDEZ, as an individual
and on behalf of all others similarly situated,

               Plaintiff,

    v.

90 DEGREE BENEFITS, LLC and
90 DEGREE BENEFITS – WISCONSIN
(f/k/a EBSO, Inc.),

               Defendant.

Case No.: 2:22-cv-00799-SCD

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................ii

TABLE OF AUTHORITIES ..................................................................................... v

I.      INTRODUCTION ......................................................................................... 1

II.     RELEVANT BACKGROUND ..................................................................... 3

        A.      Defendants' Business .......................................................................... 3

        B.      The February 2022 Data Incident ....................................................... 3

        C.      The Class Action Complaint ................................................................ 4

        D.      Initial Negotiations............................................................................. 4

        E.      The December 2022 Data Breach ....................................................... 5

        F.      Renewed Negotiations ........................................................................ 5

III.    THE PROPOSED SETTLEMENT ............................................................. 7

        A.      The Settlement Class........................................................................... 7

        B.      The Settlement ..................................................................................... 7

                1.      Out-of-Pocket Losses ............................................................... 8

                2.      Attested Time ........................................................................... 8

                3.      Credit Monitoring ..................................................................... 9

                4.      Alternative Cash Payments ....................................................... 9

                5.      Residual Funds .......................................................................... 9

                6.      Release .................................................................................... 10

        C.      Notice and Settlement Administration.............................................. 10

        D.      Claims, Exclusion and Objection Procedures .................................. 11

                1.      Claims ..................................................................................... 11

Case 2:22-cv-00799-SCD     Filed 07/19/23     Page 2 of 42     Document 24

2.     Requests for Exclusion ........................................................................ 12

3.     Objections ........................................................................................... 12

IV.    LEGAL STANDARD ...................................................................................... 13

V.    ARGUMENT ................................................................................................... 14

    A.    The Court Should Grant Class Certification for Settlement Purposes........................... 15

        1.    The Class Is Sufficiently Numerous and Joinder Is Impracticable.......................... 16

        2.    Questions of Law and Fact Are Common to the Members of the
Settlement Class. ................................................................................................ 17

        3.    The Claims of the Representative Plaintiffs Are Typical of the
Claims of Settlement Class Members. ................................................................. 18

        4.    The Class Representative Has and Will Continue to Provide Adequate
Representation for Settlement Class Members. ................................................... 18

        5.    The Proposed Class Satisfies the Requirements of Rule 23(b).............................. 19

            a.    Common Questions of Law and Fact Predominate. .......................................... 19

            b.    A Class Action Is the Superior Method for Resolving These Claims. .............. 21

    B.    The Settlement Should Be Approved as Fair, Reasonable and Adequate. ................... 21

        1.    The Representative Plaintiffs and Proposed Class Counsel Have
Adequately Represented the Class. ..................................................................... 23

        2.    The Settlement Was Negotiated at Arm's Length by Vigorous Advocates,
and There Has Been No Fraud or Collusion.......................................................... 25

        3.    The Settlement Provides Substantial Relief for the Class. ..................................... 27

            a.    The Costs, Risks, and Delay of Trial and Appeal Favor Approval of
the Settlement.................................................................................................. 28

            b.    The Method of Providing Relief Is Effective. .................................................. 29

            c.    The Proposed Award of Attorneys' Fees Is Fair and Reasonable. .................... 30

            d.    Additional Agreements Do Not Undercut the Adequacy of the
Settlement. ...................................................................................................... 31

4.    The Settlement Agreement Treats Class Members Equitably to Each Other. ............................................................................................ 31

C.    The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements. ................................................................................ 32

VI.    CONCLUSION............................................................................................. 34

# TABLE OF AUTHORITIES

**CASES:**                                                                                                          **PAGE(S):**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011)............................. 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................................... 16, 20, 21

*Aranda v. Caribbean Cruise Line, Inc.*,
   No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017)..................................................... 26

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980). ........... 14, 22, 23, 25

*Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018)................................. 30

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016).................................................... 17

*Cath. Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108 (2d Cir. 2013). ............................. 19

*CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D. Fla. 1992)................................................................ 19

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). ........................................................... 26

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)........................................................................ 22

*Fox v. Iowa Health Sys.*,
   No. 18-cv-327-jdp, 2020 WL 5678704 (W.D. Wis. 2020) (slip copy). .................................. 16

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009). .............................. 24

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982). ................................................................... 13

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016). .......................................... 27

*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449 (10th Cir. 1969). .......................................... 27

*Greek v. 90 Degree Benefits, Inc.*, No. 2:23-cv-00511 (E.D. Wis. Apr. 21, 2023). ................. 6, 31

*Hammond v. Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................... 28

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ......................................................... 27

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018)................................. 20

*Herrera v. Wells Fargo Bank, N.A.*,
No. SACV 18-332JVS, 2021 WL 3932257 (C.D. Cal. Jun. 8, 2021). ..................................... 16

*Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008). ......................................... 18

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018)................................... 20

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)......................................................................................... 22, 27

*In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015). ............................. 24, 25, 30

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019). ................................................................. 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013)...................................................................................................... 28

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012). ............................................................................ 16, 20

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016). ............................ 20

*In re Northfield Labs., Inc. Secs. Litig.*,
No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012). ............................................. 22, 23

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
Nos. 06 C 7023, 07 C 0412 & 08 C 1832, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).......... 23

*In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015)............ 16

*In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021). .......... 13, 14, 18

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)................................................................................. 22

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011). ..................... 26

*Karpilovsky v. All Web Leads, Inc.*,
No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018). .................................................. 25

*Karpilovsky v. All Web Leads, Inc.*,
No. 17-cv-01307 (N.D. Ill. Aug. 8, 2019), ECF No. 173. ....................................................... 31

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). .......................................................................... 18

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
   No. 05-cv-5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007). ............................................... 14

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. Nov. 23, 2015). ........................................ 30

*Kusinski v. Macneil Auto. Prods. Ltd.*,
   No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018). ............................................... 30

*Martin v. JTH Tax, Inc.*, No. 13-cv-6923 (N.D. Ill. Sept. 16, 2015). ........................................ 30

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)......... 26

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)............................................. 32

*Olmstead v. 90 Degree Benefits – Wis.*, No. 2:23-cv-00564 (E.D. Wis. May 3, 2023)............ 6, 31

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006). ............................................................ 18

*Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002). ....................................... 17, 18

*Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993). .................................. 19

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)................................................ 14

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015). ........................................................ 19

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010)................................................... 26

*Savanna Grp., Inc. v. Trynex, Inc.*,
   No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013)..................................................... 17

*Spates v. Roadrunner Transp. Sys., Inc.*,
   No. 15 C 8723, 2016 WL 7426134 (N.D. Ill. Dec. 23, 2016). .............................................. 18

*Steele v. GE Money Bank*,
   No. 1:08-CIV-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011). ................................ 25, 26

*Steele v. GE Money Bank*,
   No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011). ....................................... 25

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).......................... 27

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005). ........................................................... 30

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ........................................................... 17

*Wright v. Nationstar Mortg. LLC*,
  No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)................................... 26, 27, 29

**STATUTES:**                                                                    **PAGE(S):**

Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521, *et seq.* ............................................ 4

**OTHER AUTHORITIES:**                                                           **PAGE(S):**

2 H. Newberg, *Newberg on Class Actions* § 11.22 (2d ed. 1985). ................................................ 15

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). .................................................................... 25

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)...................................................................... 22

Conte & Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). ....................................... 13

Duke Law School, Rules Appendix C of *Implementing 2018 Amendments to
  Rule 23* (Aug. 2018)................................................................................................................. 32, 33

*Manual for Complex Litigation (Fourth)* § 21.612. ...................................................................... 15

*Manual for Complex Litigation (Fourth)* § 21.633-34. ............................................................... 23

*Newberg on Class Actions* § 11:50. ............................................................................................. 27

**RULES:**                                                                       **PAGE(S):**

Fed. R. Civ. P. 12(b)(6)................................................................................................................. 28

Fed. R. Civ. P. 23(a). ................................................................................................. 15, 16, 17, 18

Fed. R. Civ. P. 23(b). ........................................................................................................... passim

Fed. R. Civ. P. 23(c). ................................................................................................... 30, 32, 33

Fed. R. Civ. P. 23(e). ........................................................................................................... passim

Fed. R. Civ. P. 23. ................................................................................................................ passim

Fed. R. Civ. P. 41. ........................................................................................................................... 6

Fed. R. Civ. P. 56. ......................................................................................................................... 28

# I. INTRODUCTION[1]

In or around June 2022, Defendant 90 DEGREE BENEFITS, INC. f/k/a EBSO, INC. i/s/h/a 90 DEGREE BENEFITS – WISCONSIN (f/k/a EBSO, Inc.) ("90 Degree Benefits," together with Defendant PREFERRED CARE SERIVCES, INC. i/s/h/a 90 DEGREE BENEFITS, LLC, "Defendants") began notifying consumers and applicable regulating entities about a data breach that impacted the personal identifying information ("PII") and private health information ("PHI") of approximately 175,000 individuals (the "February 2022 Data Incident"). In or around December 2022, despite efforts to implement greater data security protections, 90 Degree Benefits again detected unusual activity on its systems and found it was the victim of a second cyberattack impacting a largely overlapping group of approximately 185,461 individuals (the "December 2022 Data Incident," collectively, the "Data Incidents"). Plaintiff Robert Fernandez was a victim of both Data Incidents, and initially commenced the above-captioned litigation in July 2022, later amending his Complaint in February 2023 to encompass both the February and December Data Incidents. Plaintiff sought relief from 90 Degree Benefits for its role in the alleged repeated compromise of Class Members' PII and PHI.

Recognizing the risks of protracted litigation, and after an all-day arm's-length mediation before Hon. Wayne Andersen (Ret.) of JAMS and long-running continued negotiations following the second breach, the Parties eventually came to an agreement on a settlement in principle.

Plaintiff now, by and through his counsel, presents this Unopposed Motion for Preliminary Approval of the Class Action Settlement. *See* Settlement Agreement, attached as Exhibit A ("Agr.") to the Declaration of Danielle L. Perry ("Perry Decl.") filed herewith. The Settlement is

---

[1] While Defendants do not oppose the relief sought in this Motion, Defendants do not make any admission as to the facts alleged throughout this Motion, and reserve their right to challenge the alleged facts should the Court deny this Motion, in whole or in part.

structured to provide significant relief to the approximately 185,461 individuals whose data was potentially compromised in the Data Incidents by establishing a non-reversionary Settlement Fund of $990,000. The Settlement Fund is structured to provide payment for: (1) claims made by Settlement Class Members for reimbursement of out-of-pocket expenses and lost time up to $5,000 per Class Member; (2) notice and settlement administration; and (3) one year of three-bureau credit monitoring. Or, in the alternative, Settlement Class Members can each claim a cash payment of $50. Should funds remain in the Settlement Fund after payment of valid claims, and approved settlement administration costs, attorney fees and costs, and Plaintiff Service Awards, any remaining funds will be used to provide up to five (5) years of additional credit monitoring for Class Members who claimed credit monitoring, and then up to $100 in extra cash to each valid claimant. If approved, the Settlement will bring certainty, closure and significant and valuable relief to those individuals as opposed to what otherwise would likely be contentious and costly litigation over 90 Degree's failure to adequately safeguard the PII and PHI of its current and former customers.

Plaintiff Fernandez now seeks preliminary approval of the Settlement, certification of a Settlement Class, appointment of Class Counsel, approval of the proposed form and method of class notice and approval of a claim procedure. This memorandum describes in detail the reasons why preliminary approval is in the best interests of the Class Members and is consistent with Federal Rule 23. As discussed in more detail below, the proposed Class should be certified and the Settlement provided preliminary approval so that notice may be issued to the Class. Accordingly, this Court should preliminarily approve the Settlement so that Settlement Class Members can receive notice of their rights and the claims administration process may begin.

## II. RELEVANT BACKGROUND

### A. Defendants' Business[2]

90 Degree Benefits, LLC (and its wholly owned regional office 90 Degree Benefits – Wisconsin) is a health company that designs health plans and administers benefits that meet employers' health and operational needs. *See* Perry Decl. ¶ 13. Through its 24 offices, 90 Degree Benefits serves approximately 525,000 members nationwide. *Id.* 90 Degree Benefits acquired EBSO, Inc. (now called 90 Degree Benefits – Wisconsin) in or about 2018. *Id.*

Plaintiffs and members of the proposed Class are current and former customers of 90 Degree Benefits. *Id.* In its ordinary course of business, 90 Degree Benefits collects sensitive PII from customers including full names, addresses, dates of birth, phone numbers, Social Security numbers, driver's license numbers, gender, health information, and usernames and passwords. *Id.* 90 Degree Benefits promises that it will protect consumers' privacy and remain in compliance with statutory privacy requirements. *Id.* For example, Defendant 90 Degree Benefits states on its website "90 Degree Benefits respects your privacy and is committed to protecting it." *Id.*

### B. The February 2022 Data Incident

On or about January 28, 2022 through February 28, 2022, 90 Degree Benefits discovered that an unauthorized person had gained access to its computer systems (the "February 2022 Incident"). Perry Decl. ¶ 10. In June 2022, 90 Degree Benefits began notifying customers and state Attorneys General about the February 2022 Incident. *Id.* ¶ 11. Plaintiff Robert Fernandez received notice that his name, date of birth, Social Security number, phone number, address and health information had potentially been compromised. *Id.* ¶ 12.

---

[2] *See supra* note 1.

### C.     The Class Action Complaint

On July 12, 2022, Plaintiff Robert Fernandez filed his original Class Action Complaint in the Eastern District of Wisconsin. *See* Compl., ECF No. 1; Perry Decl. ¶ 15. The original Complaint, as well as the later filed Amended Complaint alleged four claims for relief on behalf of himself and a class of similarly situated individuals: negligence; negligence *per se*; violation of Arizona's Consumer Fraud Act; and declaratory judgment. Compl.; Perry Decl. ¶ 16. The Complaint sought certification of a single national class as well as a subclass for Arizona residents. Compl.; Perry Decl. ¶ 17. Plaintiff sought equitable relief enjoining 90 Degree Benefits from engaging in the wrongful conduct complained of and compelling 90 Degree Benefits to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. Compl.; Perry Decl. ¶ 18. Plaintiff further sought an order requiring Defendants to provide credit monitoring services to themselves and the rest of the Class. Compl.; Perry Decl. ¶ 19. Finally, Plaintiff sought an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. Compl.; Perry Decl. ¶ 20. Soon after filing, the Parties agreed that it would be beneficial to explore opportunities for early resolution. Perry Decl. ¶ 21.

### D.     Initial Negotiations

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case before Hon. Wayne Andersen (Ret.). *Id.* ¶ 22. Hon. Wayne Andersen (Ret.) is a retired federal judge and respected JAMS mediator with extensive experience in class action mediation generally and data breach mediations in particular. *See id.* ¶ 23. The mediation proceeded via ZOOM Video Conference on November 28, 2022. *Id.* ¶ 24. After a full day of arm's-length negotiations, and significant exchange of information through Judge Andersen, the Parties came to an agreement on the central terms of a settlement agreement.

*Id.* ¶ 25. On December 12, 2022, Counsel for Defendant notified the Court that a settlement had been reached in principle and requested the Court set a deadline of January 27, 2022, to allow the Parties to prepare and execute the necessary settlement documents. *Id.* ¶ 26.

Over the next few weeks, the Parties diligently drafted and negotiated a term sheet designed to encapsulate all central terms of the settlement agreement. *Id.* ¶ 27. On January 24, 2023, Counsel for Defendant filed a request for a further extension on behalf of the Parties, up to and including February 24, 2022. *Id.* ¶ 28.

### E. The December 2022 Data Breach

In approximately January or February of 2023, Counsel for Defendants notified Counsel for Plaintiff that 90 Degree Benefits had been the victim of a second data breach that occurred on or around December 5, 2022 through December 11, 2022 (the "December 2022 Incident"), and confirmed that Plaintiff's information had again been impacted. *Id.* ¶ 29. As a direct result, on February 24, 2022, Plaintiff filed his Amended Complaint. *Id.* ¶ 30; ECF No. 19. The Amended Complaint included the same claims for relief as had been included in his original Complaint, but was expanded to include both the February 2022 Incident and the December 2022 Incident (collectively, the "Data Incidents"). *Id.*

### F. Renewed Negotiations

After Counsel for Defendant, upon information and belief, consulted with Hon. Wayne Andersen (Ret.), they reached out to Counsel for Plaintiff to explore the possibility of expanding the Settlement to include both breaches. *Id.* ¶ 31. Counsel for Plaintiff required additional information regarding the scope of the breach in order to further negotiate the Settlement. *Id.* ¶ 32.

The information took some time to gather, but Defendant eventually provided it, confirming that 185,461 individuals had been impacted by the combined Data Incidents, and that the same or similar information that was impacted by the February 2022 Incident was impacted by

5

the December 2022 Incident. *Id.* ¶ 33. Renewed settlement negotiations began between the Parties and continued for the next few months. *Id.* ¶ 34. Counsel for Plaintiffs negotiated a proportional increase in the overall settlement fund, as well as a significantly increased alternative cash payment, residual credit monitoring, and residual cash payments. *Id.* The Parties reached an agreement on the new central terms in or about April 2023. *Id.* ¶ 35.

On April 21, 2023, Plaintiffs Steven Greek and John Boyajian filed a Complaint against Defendants in the United States District Court for the Eastern District of Wisconsin, captioned as *Steven Greek et al. v. 90 Degree Benefits, Inc. et al.*, No. 2:23-cv-00511 (the "*Greek* Action") asserting claims relating to the December 2022 Incident. *Id.* ¶ 36. On May 3, 2023, Plaintiff Jenny Olmstead filed a Complaint against Defendants in the United States District Court for the Eastern District of Wisconsin, captioned as *Jenny Olmstead et al v. 90 Degree Benefits – Wisconsin (f/k/a EBSO, Inc.)*, No. 2:23-cv-00564 (the "*Olmstead* Action") asserting claims relating to the December 2022 Incident. *Id.* ¶ 37.

Following further negotiations with Defendant, and with counsel for Plaintiffs Greek, Boyajian, and Olmstead, the Parties were able to come to a final agreement on the terms of the Settlement. *Id.* ¶ 38. The *Greek* Action and the *Olmstead* Action were voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41 on or about June 1, 2023, and May 31, 2023, respectively. *Id.* ¶ 39.

The final Settlement Agreement ("Agr.") was executed on July 19, 2023, and is attached in full to the Declaration of Danielle L. Perry, filed herewith, at Exhibit A.

III.    **THE PROPOSED SETTLEMENT**

    A.    **The Settlement Class**

The proposed Settlement Class is defined as:

> All individuals who were notified by 90 Degree Benefits of the cyberattacks perpetrated against 90 Degree Benefits on or around January 28, 2022 through February 28, 2022 and December 5, 2022 through December 11, 2022.

Perry Decl. ¶ 42. The Settlement specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id.* ¶ 43.

    The Settlement Class is comprised of approximately 185,641 individuals. *Id.* ¶ 44.

    B.    **The Settlement**

    The Settlement negotiated on behalf of the Class provides for the creation of a non-reversionary common fund in the amount of $990,000. *Id.* ¶ 45. The fund is structured to cover both cash benefits and credit monitoring services for valid claimants, as well as the costs of notice and administration, and court approved attorneys' fees, costs, and service awards. *Id.* From the fund, Settlement Class Members can claim one of two categories of relief. First, Class Members can claim up to $5,000 in reimbursements for out-of-pocket monetary losses, including compensation for up to three (3) hours at twenty-five dollars and zero cents ($25.00) per hour and one (1) year of three (3)-bureau credit monitoring services. *Id.* ¶ 46. Or, in the alternative to the first category of relief, Settlement Class Members can make a claim for cash payment of $50. *Id.* ¶ 47. And finally, the Settlement Agreement requires Defendants to provide confirmatory discovery regarding significant data security enhancements it has put in place since the Data Incidents. *Id.* ¶ 60.

### 1. Out-of-Pocket Losses

"Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incidents including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of Settlement Class Member's personal information; (ii) costs incurred on or after January 28, 2022, associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* ¶ 47. Settlement Class Members who elect to submit a claim for Reimbursement of Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. *Id.* ¶ 49.

### 2. Attested Time

Settlement Class Members may also submit a claim for reimbursement of Attested Time up to three (3) hours at twenty-five dollars and zero cents ($25.00) per hour. *Id.* ¶ 50. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Breach and the time associated with each action. Settlement Class Members can only receive reimbursement of Attested Time if at least one (1) full hour was spent.

*Id.* Claims for Attested Time are capped at seventy-five dollars and zero cents ($75.00) per individual. *Id.*

### 3. Credit Monitoring

Settlement Class Members are eligible to enroll in one (1) year of three-bureau Credit Monitoring Services provided by Experian or other comparable provider, regardless of whether the Settlement Class Member submits a claim for reimbursement of Out-of-Pocket Losses or Attested Time. *Id.* ¶ 51. Credit Monitoring Services will include daily three-bureau credit monitoring with Equifax, Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features. *Id.* ¶ 52. The Settlement Administrator shall send an activation code to each valid Credit Monitoring Services claimant within thirty (30) days of the Effective Date which can be used to activate Credit Monitoring Services. *Id.* ¶ 53. Enrollment codes shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such codes shall be sent via U.S. mail. *Id.*

### 4. Alternative Cash Payments

In lieu of reimbursement for Out-of-Pocket Losses, Attested Time, and Credit Monitoring Services, Settlement Class Members can claim an alternative cash payment of $50. *Id.* ¶ 54.

### 5. Residual Funds

Any funds remaining in the Settlement Fund after payment of valid claims, purchase of credit monitoring, payment of notice and administration costs, and payment of court-approved attorneys' fees, costs and Plaintiff Service Awards will be used, to the extent practical, to purchase: first, up to a total of five (5) years of credit monitoring services for Settlement Class Members who made a claim for Credit Monitoring Services ("Residual Credit Monitoring Services"); and second,

a payment of up to $100 to each Settlement Class Member who submitted a valid claim ("Residual Cash Payment"). *Id.* ¶¶ 55–57.

6. *Release*

The Release in this case is tailored to the claims that have been plead or could have been plead in this case. *Id.* ¶ 61. Settlement Class Members who do not exclude themselves will release any and all claims arising from the Data Incidents and/or the recordkeeping or data security practices in place at the time of the Data Incidents. *Id.* ¶ 62.

**C. Notice and Settlement Administration**

After gathering competitive bids, the Parties agreed to propose using Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Notice Specialist and Settlement Administrator in this case. *Id.* ¶ 63. The agreed-upon Notice Plan requires that within thirty (30) days of the date the Preliminary Approval Order is entered, the Settlement Administrator will mail the Short Form Notice to each of the approximately 185,461 Settlement Class Members, after performing National Change of Address searches and/or skip tracing on the Settlement List. *Id.* ¶ 64. The Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, FAQs, and Spanish language materials. *Id.* ¶ 66. The Settlement Administrator will also maintain a toll-free help line available to provide Settlement Class Members with additional information about the Settlement. *Id.* ¶ 67.[3]

Both the Long Form and Summary Notice, attached to the Settlement Agreement at Exhibits 2 and 3 respectively, are clear and concise. They inform individuals in the Settlement

---

[3] For more information on the proposed Notice Program and Settlement and Claims Administrator, please *see* the Declaration of Cameron R. Azari, Esq. on Notice Plan and Notices, filed as Exhibit C to the Declaration of Danielle L. Perry.

Class of the material terms of the Settlement Agreement, advise them of their eligibility for compensation, provides descriptions of the claims process and explains the various options available to individuals in the Settlement Class, which include making a claim, requesting exclusion and making an objection to the Settlement Agreement. Agr. at Exs. 2–3. The Notice also provides information regarding the requested attorneys' fees, costs and incentive award and provides contact information should any Settlement Class Member wish to get any additional information about the Settlement.[4] *Id.*

### D. Claims, Exclusion and Objection Procedures

The timeline as set forth in the Settlement Agreement is designed to give individuals in the Settlement Class sufficient time to receive notice, review the relevant documents—including Plaintiff's motion for attorneys' fees and costs—and to determine what they would like to do.

#### 1. Claims

Class Members will have until ninety (90) days after Notice is issued to complete and submit their Claim Form to the Claims Administrator, either by mail or online. *Id.* ¶ 69. The Claim Form, attached to the Settlement Agreement at Exhibit 1, is written in plain language to facilitate Settlement Class Members' ease in completing it. *Id.* ¶ 70, Ex. A-1. The Claims Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. *Id.* ¶ 71. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity. *Id.* ¶ 72. Where a claim is deemed deficient by the Settlement

---

[4] Although the Settlement Agreement calls for the Settlement Administrator to respond to Class Members within twenty-four (24) hours, Epiq subsequently notified Plaintiffs' Counsel it would not be able to meet that requirement. All Parties have agreed that responses could be made within three (3) days.

Administrator, Settlement Class Members will be provided twenty-one (21) days to cure the deficiencies, after receiving notice from the Administrator. *Id.*

2. *Requests for Exclusion*

To request exclusion from the Settlement, a member of the Settlement Class must, within sixty (60) days of entry of the Notice Deadline, make their request in writing, and must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. *Id.*¶ 74.

3. *Objections*

To object to the Settlement, an individual in the Settlement Class must, within sixty (60) days of entry of the Notice Deadline, submit any objections in writing to the Settlement Administrator. *Id.* ¶ 77. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* ¶ 78.

The procedures and deadlines for filing exclusion requests and objections will be identified in the Notice directly sent to Class Members, and described in more detail in the Long Form Notice

that will be available to all Settlement Class Members on the Settlement Website. *See* Agr., Exs. 2–3. The Notice further informs Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. The Notice also informs individuals in the Settlement Class that they will be bound by the Release contained in the Settlement Agreement unless they validly exercise their right to exclusion in a timely manner. *Id.*

## IV.    LEGAL STANDARD

Courts review proposed class action settlements using a well-established two-step process. *See* Conte & Newberg, *Newberg on Class Actions* § 11.25 at 38–39 (4th ed. 2002); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). At the first, preliminary approval stage, the district court must make three essential inquiries.

First, the court must determine whether it "will likely be able" to certify the putative class for purposes of judgment on the proposed settlement. *In re TikTok*, 565 F. Supp. 3d at 1083 (citing Fed. R. Civ. P. 23(e)(1)(B)(ii)); *see Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011).

Second, the district court must determine whether the proposed settlement is "within the range of possible approval" with regard to the criteria set forth in Rule 23(e)(2). *Id* at *6. The purpose of the inquiry is only "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing," *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982), "not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards[.]" *Am. Int'l Grp. v. ACE INA Holdings*, 2011 WL 3290302, at *6. "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts*

*Int'l's Holiday Network, Ltd.*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)).

And finally, if the district court finds that it will likely be able to certify the putative class and that the proposed settlement is within the range of possible approval the court must then direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1); *In re TikTok*, 565 F. Supp. 3d at 1083.

## V.    ARGUMENT

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the district court must: (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e); and (3) approve the proposed notice plan and direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok*, 565 F. Supp. 3d at 1084 (internal citations omitted).

Here, the proposed Settlement Class and California Settlement Subclass meet the standards for certification; the proposed Settlement is an outstanding result for Settlement Class Members and well within the range of possible approval; and the Notice Program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

## A. The Court Should Grant Class Certification for Settlement Purposes.

The Parties have agreed that, for settlement purposes only, the Court should make preliminary findings and enter an Order granting provisional certification of the Settlement Class and appointing Plaintiff Robert Fernandez, as well as Steven Greek, John Boyajian, and Jenny Olmstead (collectively "Representative Plaintiffs") and Gary E. Mason, Danielle L. Perry, and Lisa A. White of Mason LLP ("proposed Settlement Class Counsel") to represent the Settlement Class. "The validity of use of a temporary settlement class is not usually questioned." 2 H. Newberg, *Newberg on Class Actions* § 11.22 (2d ed. 1985). The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.] . . . An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation (Fourth)* § 21.612.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in

a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.*; *see also Fox v. Iowa Health Sys.*, No. 18-cv-327-jdp, 2020 WL 5678704, at *2 (W.D. Wis. 2020) (slip copy). Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). Both the Settlement Class and the California Settlement Subclass should be similarly certified. *See Herrera v. Wells Fargo Bank, N.A.*, No. SACV 18-332JVS, 2021 WL 3932257, at *12 (C.D. Cal. Jun. 8, 2021) (granting preliminary approval of settlement and finding equitable treatment of class members even where statutory subclass members would receive greater relief than non-statutory subclass members).

Here, the Settlement Class meets the requirements of Rule 23 and warrant certification.

### 1. The Class Is Sufficiently Numerous and Joinder Is Impracticable.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a

16

class of forty is generally sufficient." *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. Jan. 4, 2013). Here, the proposed Class encompasses over 185,000 individuals. There is no question numerosity is satisfied.

> 2. *Questions of Law and Fact Are Common to the Members of the Settlement Class.*

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556; *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (same).

Here, the questions of law and fact at issue arise from a common nucleus of operative fact—the circumstances concerning the February 2022 and December 2022 Data Incidents—and commonality is satisfied because the circumstances of each particular Class Member retains that common core of factual or legal issues with the rest of the Class. *Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002). The Representative Plaintiffs' claims center on whether Defendants failed to adequately safeguard the records of Plaintiff and other Settlement Class Members. For example, issues common to all Class and Subclass Members include:

- Whether Defendants owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiff's and Settlement Class Members' PII;

- Whether Defendants knew or should have known that they did not employ reasonable measures to keep the PII of Plaintiff and Settlement Class Members secure; and

- Whether Defendants violated the law by failing to promptly notify Plaintiff and members of the Classes that their PII had been compromised.

These common questions, and others alleged by Plaintiff Fernandez in his operative Complaint, are central to the causes of action brought here and can be addressed on a class-wide

basis because they all tie back to the same common nucleus of operative facts—the Data Incidents and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. at 213 ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."). Thus, Representative Plaintiffs have met the commonality requirement of Rule 23.

### 3. The Claims of the Representative Plaintiffs Are Typical of the Claims of Settlement Class Members.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *2 (N.D. Ill. Dec. 23, 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of the Representative Plaintiffs and all Class Members arise out of the same course of conduct—that Defendants collected and failed to adequately protect the Settlement Class Members' PII—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Class Representative Has and Will Continue to Provide Adequate Representation for Settlement Class Members.

The "adequacy" requirement of Rule 23(a) has two components: (1) the representatives must not possess interests which are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *In re TikTok*, 565 F. Supp. 3d at 1085 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690,

698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). Here, the Representative Plaintiffs and proposed Settlement Class Counsel meet the test of adequacy.

First, the Representative Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class Members: all have had their personal identifying information compromised due to the alleged shortfalls in 90 Degree Benefits' computer systems. Plaintiffs' pursuit of this matter has demonstrated that they have been, and will remain, zealous advocates for the Settlement Class. Thus, Plaintiffs have the same interests as the Settlement Class, and are (more than) suitable representatives.

Similarly, proposed Settlement Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, are among the leaders in pursuing complex data breach class actions in Illinois and across the country. *See* Perry Decl. ¶¶ 2–9, Ex. B. Accordingly, Plaintiffs and their counsel will adequately represent the Settlement Class.

     5.    *The Proposed Class Satisfies the Requirements of Rule 23(b).*

     a.    <u>Common Questions of Law and Fact Predominate.</u>

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Cath. Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted). This requirement "tests whether the proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Representative Plaintiffs and the Settlement Class, and whether Defendants breached that duty. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations

went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

### b. A Class Action Is the Superior Method for Resolving These Claims.

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of over a hundred thousand claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incidents.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Classes should be certified for settlement purposes.

### B. The Settlement Should Be Approved as Fair, Reasonable and Adequate.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses

of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d at 312–13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Secs. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT&T*, 270 F.R.D. at 346). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23—and particularly the portions thereof dealing with settlement—was amended in December 2018. The first step in the amended process is a preliminary fairness determination: the new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has been issued to the class, is a final fairness hearing. Fed. R. Civ. P. (e)(2); *see also Manual for Complex Litigation (Fourth)* § 21.633-34; *In re Northfield Labs.*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement and issuing Notice.

> 1.     *The Representative Plaintiffs and Proposed Class Counsel Have Adequately Represented the Class.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, Nos. 06 C 7023, 07 C 0412 & 08 C 1832, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the Settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, proposed Settlement Class Counsel conducted extensive research regarding the Plaintiffs' claims, Defendants, and the Data Incidents. Perry Decl. ¶ 13. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Hon. Wayne Andersen (Ret.) of JAMS. *Id.* ¶¶ 22–25. Prior to the mediation, the Parties fully briefed the relevant issues, and Defendants provided information necessary for proposed Settlement Class Counsel to fully evaluate the case. *Id*. ¶ 24. Even after reaching an agreement on the central terms, the Parties spent months fully negotiating the finer points of the Settlement Agreement. *Id*. ¶¶ 27–29. And, when a second breach called into the question the terms of the original settlement, proposed Settlement Class Counsel gathered additional information, and renegotiated the terms of the agreement, proportionally increasing the amount of the Settlement Fund, negotiating an increase in the alternative cash payment as well as significant residual benefits. As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.*, Perry Decl. ¶¶ 3–9, Ex. B), the Parties were able to carry out settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement).

In addition, the adequacy of representation requirement is satisfied because Representative Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15–16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned

with the claims of the other Class Members. They thus have every incentive to vigorously pursue the claims of the Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. Perry Decl. ¶ 79. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Settlement Class Counsel believe that the Parties' Settlement is fair, reasonable, and adequate, and in the best interests of the members of the Class. Perry Decl. ¶ 84. Proposed Settlement Class Counsel also believe that the benefits of the Parties' Settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

> 2. *The Settlement Was Negotiated at Arm's Length by Vigorous Advocates, and There Has Been No Fraud or Collusion.*

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class,

preventing potential collusion"); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[5]

Here, the Agreement resulted from good faith, arm's-length settlement negotiations over many months, including an in-person mediation session with respected mediator Hon. Wayne Andersen (Ret.) of JAMS. Perry Decl. ¶¶ 22–24. Prior to the mediation, the Parties fully briefed the relevant issues, and Defendants provided information necessary for proposed Settlement Class counsel to fully evaluate the case. *Id.* ¶ 24. At all times, the settlement negotiations were adversarial, non-collusive, and at arm's length. *Id.* ¶ 35. Terms had to be renegotiated in light of the second breach after Counsel for Defendant reached out to Judge Andersen, and Counsel for Greek, Boyajian, and Olmstead were looped into discussions. *Id.* ¶ 39. In May 2023, the Parties executed a term sheet, but still spent over a month finalizing all settlement terms and documents. *Id.* ¶¶ 36–41.

Accordingly, it is clear that the Parties negotiated their Settlement at arm's length and absent any fraud or collusion. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017) (granting preliminary approval to privacy settlement resolved with the assistance of a mediator); *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arm's length, and where

---

[5] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

the mediation was overseen by an experienced mediator); *Wright*, 2016 WL 4505169, at *11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery). Thus, this factor weighs in favor of preliminary approval.

### 3. The Settlement Provides Substantial Relief for the Class.

The Settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions* § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the Settlement provides a non-reversionary $990,000 Settlement Fund. Settlement Class Members can claim significant cash reimbursements for expenses and lost time up to $5,000 per person, as well as one-year of three-bureau credit monitoring services. Or, in the alternative, Settlement Class Members can each claim an alternative cash benefit of $50. Moreover, any non *de minimus* residual funds are to be used to benefit Settlement Class Members: residual funds will be used first to provide up to five additional years of three-bureau credit monitoring for those who claimed it, and then to pay up to $100 per valid claimant.

As such, and as further detailed below, the proposal should be preliminarily approved with an order directing that notice be provided to the Class.

a. The Costs, Risks, and Delay of Trial and Appeal Favor Approval of the Settlement.

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Representative Plaintiffs strongly believe in the merits of their case, they also understand that 90 Degree Benefits will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to

data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Class Members can have a chance at relief.

Representative Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits . . . , the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

### b. The Method of Providing Relief Is Effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This Settlement proposes the gold-standard in class member relief: a combination of relief so that Class Members will have the opportunity to receive some compensation and relief with a simple attestation or by checking a box, and greater compensation by providing documentary evidence. Perry Decl. ¶¶ 43–55. Class Members will have ninety (90) days from the commencement of the Notice Process to make a claim for a portion of the Settlement by submitting their Claim Form either online or via U.S. Mail. *Id.* ¶ 67. The Claims Administrator will have the authority to assess the validity of the claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Class

Member twenty-one (21) days to cure the defect before rejecting the claim. *Id.* ¶ 71. Claims will be paid within thirty (30) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. Accordingly, all Settlement Class Members will receive their award with a reasonable amount of time. For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

c. The Proposed Award of Attorneys' Fees Is Fair and Reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Proposed Settlement Class Counsel will seek an award of attorneys' fees and costs in the amount of $330,000—33% of the value of the total Settlement.[6] This percentage fee requested falls well within that of other approved class settlements, including privacy class settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. Nov. 23, 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923 (N.D. Ill. Sept. 16, 2015), ECF No. 85 (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prods. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund") *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (same); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund);

---

[6] Plaintiffs will file a complete petition for fees, costs, and service awards by separate filing prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement.

*Karpilovsky v. All Web Leads, Inc.*, No. 17-cv-01307 (N.D. Ill. Aug. 8, 2019), ECF No. 173 (approving fees of 35% of the settlement fund). Proposed Settlement Class Counsel achieved an excellent result for the Class after undertaking substantial risk in bringing this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiffs' Counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice. At this stage of the Settlement, the requested fees and costs are clearly within the range of possible approval, and support preliminary approval of the Settlement Agreement.

### d. Additional Agreements Do Not Undercut the Adequacy of the Settlement.

Upon the late filing of the *Greek* Action and the *Olmstead* Action, Proposed Settlement Class Counsel reached out to counsel for Greek, Boyajian, and Olmstead to inform them of the terms of the negotiated Settlement, and to offer to add Plaintiffs Greek, Boyajian, and Olmstead— themselves adequate representatives—as proposed Class Representatives in the Settlement, and to reimburse counsel for their lodestar in the case. Perry Decl. ¶ 39. After multiple discussions about the facts of the Data Incidents, and the terms (and renegotiated terms) of the Settlement, counsel and Plaintiffs Greek, Boyajian, and Olmstead agreed. This factor should not weigh against Settlement—if anything, the approval of separate plaintiffs' counsel on the Settlement negotiated by Proposed Class Counsel should weigh in favor of approval.

### 4. The Settlement Agreement Treats Class Members Equitably to Each Other.

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to receive the exact same relief. Perry Decl. ¶¶ 44–59. Importantly, Direct Notice will be sent to Settlement Class Members, and

all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Representative Plaintiffs will each be seeking a $2,500 award for their services on behalf of the Class, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements and thus does not create an improper motivation to settle or give rise to undue inequities across the Classes.

Accordingly, this factor also weighs in favor of preliminary approval.

### C. The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke Law School, Rules Appendix C of *Implementing 2018 Amendments to Rule 23* at 17–18.23 (Aug. 2018). Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to amended Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods

are best may disregard contemporary communication realities." Duke Law School, Rules Appendix C of *Implementing 2018 Amendments to Rule 23* at 19. Consistent with that directive, Counsel for the Parties and the Claims Administrator have carefully considered cost, customer preference, and effectiveness in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the Settlement Class.

Here, Notice will be provided directly to individual Settlement Class Members via the contact information they provided to Defendants when interacting with them. Perry Decl. ¶ 64. Specifically, after performing National Change of Address searches and/or skip tracing on the Settlement List the Settlement Administrator will mail Notice to the Settlement Class via first-class mail. *Id.* ¶ 65. The Claims Administrator will also create and maintain a Settlement Website where Settlement Class Members can view relevant documents, submit their claims, or get answers to frequently asked questions. *Id.* ¶ 66. In addition to the direct Notice and Settlement Website, the Claims Administrator will also maintain a dedicated toll-free, live operator help line, to provide Settlement Class Members with additional information they may need. *Id.* ¶ 67.

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included in both the Short Notice and Long Notice in language that is easy to understand. *See* Perry Decl. Exs. A-2, A-3.

Because the Class Notice and Notice Plan set forth in the Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances, the Court should direct the Parties and the Claims Administrator to proceed with providing Notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## VI.    CONCLUSION

Representative Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Robert Fernandez, Steven Greek, John Boyajian, and Jenny Olmstead as the Class Representatives, (3) appoint Plaintiffs' Counsel as Class Counsel, (4) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3) and (e) for settlement purposes only, (5) approve the Parties' proposed Notice Program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Settlement Class Members to submit claims for compensation, objections and requests for exclusion, and (7) set a date for a Final Approval Hearing. A proposed Preliminary Approval Order is attached to the Settlement Agreement, at the Declaration of Danielle L. Perry, Exhibit A-4.

Date: July 19, 2023                                  Respectfully Submitted,

                                                     */s/ Danielle L. Perry*
                                                     Danielle L. Perry
                                                     Gary E. Mason
                                                     Lisa A. White
                                                     **MASON LLP**
                                                     5335 Wisconsin Avenue NW, Suite 640
                                                     Washington, DC 20015
                                                     Tel.: 202.429.2290
                                                     dperry@masonllp.com
                                                     gmason@masonllp.com
                                                     lwhite@masonllp.com

                                                     *Attorneys for Plaintiffs & the Putative Class*

34