**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

ROBERT FERNANDEZ, as an individual
and on behalf of all others similarly situated,

        Plaintiff,

    v.

90 DEGREE BENEFITS, LLC and
90 DEGREE BENEFITS – WISCONSIN
(f/k/a EBSO, Inc.),

        Defendant.

Case No.: 2022-cv-00799-SCD

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................. 1
II.  CASE SUMMARY ............................................................................................. 2
     A.   The February Data Incident ................................................................... 2
     B.   The Class Action Complaint .................................................................. 3
     C.   Initial Negotiations ................................................................................ 3
     D.   A Second Breach .................................................................................... 4
     E.   Renewed Negotiations ............................................................................ 4
III. THE SETTLEMENT ........................................................................................... 6
     A.   The Settlement Class .............................................................................. 6
     B.   Settlement Benefits ................................................................................ 6
     C.   Release .................................................................................................... 7
     D.   Class Representatives' Service Awards, and Attorneys' Fees and Costs ... 7
IV.  COURT APPROVED NOTICE PROGRAM AND CLASS RESPONSE ..................... 10
     A.   CAFA Notice was Completed ................................................................ 10
     B.   Class Members Were Sent Direct and Individualized Notice ............... 10
     C.   Settlement Website ................................................................................. 12
     D.   Toll-Free Number and Post Box ............................................................ 12
     E.   Requests for Exclusion and Objections ................................................. 13
     F.   Claims and Distributions ....................................................................... 13
V.   FINAL APPROVAL IS WARRANTED ................................................................. 13
     A.   The Settlement Approval Process .......................................................... 13
     B.   The Notice Provided Met Requirements of Due Process and Rule 23 ... 17
     C.   The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved ... 18
          1.   The Settlement Provides Substantial Relief When Measured Against the
               Strength of the Plaintiffs' Case ...................................................... 19
               a.   Diverse and substantial legal and factual risks weigh in favor of
                    settlement. ............................................................................... 19
               b.   The monetary terms of this Settlement fall within the range of related
                    privacy class action settlements ............................................. 20
          2.   Continued Litigation is Likely to be Complex, Lengthy, and Expensive 21
          3.   There Has Been No Opposition to the Settlement ........................... 21
          4.   Class Counsel Strongly Endorse the Settlement ............................ 22
          5.   The Stage of the Proceedings and the Amount of Discovery Completed
               Supports Approval ......................................................................... 22
          6.   The Settlement is Reasonable in Light of the Requested Attorneys'
               Fees ................................................................................................ 23
     D.   The Requested Service Awards are Lower than the Amounts Available to any
          Valid Claimant ....................................................................................... 25

E.     The Settlement Class Should be Finally Certified ................................................. 26

VI.    CONCLUSION .................................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
   616 F.2d 305 (7th Cir. 1980) ........................................................................ 14

*Bayat v. Bank of the W.,*
   No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) .....................17

*Benzion v. Vivint, Inc.,*
   No. 12-61826 (S.D. Fla. Feb. 23, 2015) ...............................................................8

*Bickel v. Sheriff of Whitley Cnty.,*
   No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015)......................................9

*Birchmeier v. Caribbean Cruise Line, Inc.,*
   896 F.3d 792 (7th Cir. 2018) ...............................................................8, 9, 25

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ........................................................................................24

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) ...................................................7, 25, 26

*Craftwood Lumber Co.,*
   No. 11–cv–4462, 2015 WL 1399367 (N.D. Ill. March 23, 2015) ..........................25

*Desai v. ADT Sec. Servs., Inc.,*
   No. 11-1925 (N.D. Ill. Feb. 27, 2013) ...............................................................8

*Felzen v. Andreas,*
   134 F.3d 873 (7th Cir. 1998) .........................................................................14

*Fraley v. Facebook, Inc.,*
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ...............................................................21

*Fraley v. Batman,*
   638 F. App'x 594 (9th Cir. 2016).......................................................................21

*Gehrich v. Chase Bank USA, N.A.,*
   316 F.R.D. 215 (N.D. Ill. 2016).................................................................20, 21

*Google Cookie,*
   No. 1:12-md-02358 (D. Del. June 12, 2012).......................................................21

*Google Referrer Header,*
   No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010) ...................................................21

*Grady v. de Ville Motor Hotel, Inc.,*
   415 F.2d 449 (10th Cir. 1969) .........................................................................20

*Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.C.,*
   No. 212 F.R.D. 400 (ED. Wis. 2002) ...........................................................9, 24

*Greek et al. v. 90 Degree Benefits, Inc. et al.,*
   No. 2:23-cv-00511 (E.D. Wis. Apr. 21, 2023) ................................................... 5

*Hammond v. The Bank of N.Y. Mellon Corp.,*
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................................................19

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................20

*Heath et al. v. Insurance Technologies Corp et al.*,
No. 3:21-cv-01444-N (N.D. Tex. Jan. 4, 2023) ..............................................18

*Heekin v. Anthem, Inc.*,
No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .....................8, 25

*Holmes v. Roadview, Inc.*,
No. 15-CV-4-JDP, 2016 WL 1466582 (W.D. Wis. Apr. 14, 2016) .................17

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ...............................................................14, 18

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ..............................................................14

*In re Cap. One TCPA Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ...........................................................8, 24

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..........................................................................23

*In re Forefront Data Breach Litigation*,
2023 WL 6215366 (E.D. Wis. March 22, 2023) ...............................................9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013) ..........................................................................19

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...........................................................21

*In re Northfield Labs., Inc. Sec. Litig.*,
No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) .....................14, 16

*In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*,
No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ...........................18

*In re Sw. Airlines Voucher Litig.*,
No. 110CV-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) .....................25

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .....................................................................22, 24

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ....................................................13, 17, 18, 22

*Karpilovksy v. All Web Leads, Inc.*,
No. 2017-cv-01307 (N.D. Ill. Aug. 8, 2019) .....................................................8

*Kaufman v. American Express Travel Related Services Company*,
877 F. 3d 276 (7th Cir. 2017) .........................................................................16

*Kenney et al v. Centerstone of America, Inc., et al.*,
No. 3:20-cv-01007 (M.D. Tenn. Aug. 9, 2021) ...............................................17

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)...............................................................9, 14, 24

*Martin v. JTH Tax, Inc.*,
    No. 13-6923 (N.D. Ill. Sept. 16, 2015) ...................................................................9, 25

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009).............................................................22, 24

*Olmstead et al v. 90 Degree Benefits – Wisconsin (f/k/a EBSO, Inc.)*,
    No. 2:23-cv-00564 (E.D. Wis. May 3, 2023) ............................................................ 5

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .................................................................................24

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................................17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).............................................................................................. 17

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015)........................................................................ 17

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .....................................................................23, 24, 25

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................21

*Sony Gaming Networks*,
    No. 3:11-md-02258 (S.D. Cal.) ......................................................................20, 21

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ...............................................................................24

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...............................................................................19

*Taubenfeld v. Aon Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...............................................................................9, 25

*TikTok, Inc., Consumer Privacy Litigation*,
    617 F. Supp. 3d 904 (N.D. Ill. July 28, 2022) .......................................................18

*Vergara v. Uber Techs., Inc.*,
    No. 15–cv–6942 (N.D. Ill. Feb. 26, 2018)...............................................................9

*Will v. Gen. Dynamics Corp.*,
    No. 06–698–GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ................................8

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016)................................ 20

**Statutes**

28 U.S.C. § 1715................................................................................................... 10

**Rules**

Fed. R. Civ. P. 23(e)(1)(A) ..................................................................................... 15

Fed. R. Civ. P. 23(e) ..........................................................................................15, 16

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................... 16

Case 2:22-cv-00799-SCD   Filed 10/17/23   Page 6 of 33   Document 30

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 16, 18

**Other Authorities**

Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* (4th ed. 2002) ........................................................ 14, 15
*Manual for Complex Litigation* § 21.632 (4th ed. 2004) .............................................15
William B. Rubenstein,
   *Newberg on Class Actions* § 8:36 (5th ed. 2011) (updated 2021) ...........................17

## I.  **INTRODUCTION**

On July 21, 2023, this Court preliminarily approved a proposed class action settlement between Plaintiff Robert Fernandez ("Plaintiff") and Defendants 90 DEGREE BENEFITS, INC. f/k/a EBSO, INC. i/s/h/a 90 DEGREE BENEFITS – WISCONSIN (f/k/a EBSO, Inc.) ("90 Degree Benefits"), and PREFERRED CARE SERIVCES, INC. i/s/h/a 90 DEGREE BENEFITS, LLC ("Defendants"). ECF No. 26. Class Counsel's efforts created a $990,000, non-reversionary common fund for the benefit of approximately 183,329[1] individuals whose personal identifying information ("PII") and private health information ("PHI") was potentially compromised by the February 2022 and December 2022 breaches of Defendants' computer systems (collectively, the "Data Incidents").

From the fund, Settlement Class Members can claim either (1) up to $5,000 in reimbursements for out-of-pocket monetary losses, including compensation for up to three hours of lost time at $25 per hour and one year of three-bureau credit monitoring services; or (2) a cash payment of up to $50. Any funds remaining in the Settlement Fund after payment of valid claims, purchase of credit monitoring, payment of notice and administration costs, and payment of court-approved attorneys' fees, costs and Plaintiff service awards will be used, to the extent practical, to purchase: first, up to a total of five years of credit monitoring services for Settlement Class Members who made a claim for credit monitoring services ("Residual Credit Monitoring Services"); and second, a payment of up to $100 to each Settlement Class Member who submitted a valid claim ("Residual Cash Payment").

Class Counsel have zealously prosecuted Plaintiff's and Class Members' claims, achieving

---

[1] While the class was originally estimated to number 185,461 individuals, after deduplication of records, the Settlement Administrator found the class actually numbered 183,329 unique individuals. *See* Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan and Notices ("Azari Dec."), filed herewith, ¶ 11.

the Settlement Agreement only after extensive investigation, exchange of information, and arm's length negotiations with the assistance of respected mediator and former federal judge Hon. Wayne Andersen (Ret.) of JAMS. Even after reaching an agreement on the central terms, and renegotiating those terms after a second data incident, Class Counsel worked for months to finalize the Settlement Agreement, and associated notice exhibits. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated direct and individual notice to the Settlement Class Members through U.S. Mail. The individual Class notice had a reach of 95% and provided Settlement Class Members with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. Out of the 183,329 Settlement Class Members, only six have requested exclusion from the Settlement, and no class member has objected. The period for objections and exclusions closes as of the date of this filing, October 17, 2023. The claims period, however, is still open and will run through November 16, 2023.

## II.     CASE SUMMARY[2]

### A.     The February Data Incident

On or about January 28, 2022 through February 28, 2022, 90 Degree Benefits discovered that an unauthorized person had gained access to their computer systems (the "February 2022 Incident"). *See* Decl. of Danielle L. Perry in Supp. of Pl.'s Mot. for Prelim. Approval ¶ 10, ECF No. 25 ("Perry PA Decl."). In June 2022, 90 Degree Benefits began notifying customers and state Attorneys General about the February 2022 Incident. *Id.* ¶ 11. Plaintiff Robert Fernandez received notice that his name, date of birth, Social Security number, phone number, address and health

---

[2] Sections II and III have been largely adopted from Plaintiffs' Motion for Preliminary Approval, filed on July 19, 2023 (*see* ECF No. 24) and Plaintiff's Corrected Motion for Attorneys' Fees, Costs, and Service Awards (*see* ECF No. 29).

information had potentially been compromised. *Id.* ¶ 12.

## B. The Class Action Complaint

This class action lawsuit was initiated on July 12, 2022. ECF No. 1. The original Complaint, as well as the later filed Amended Complaint alleged four claims for relief on behalf of himself and a class of similarly situated individuals: negligence; negligence *per se*; violation of Arizona's Consumer Fraud Act; and declaratory judgment. ECF No. 1; Perry PA Decl. ¶ 16. The Complaint sought certification of a single national class as well as a subclass for Arizona residents. ECF No. 1; Perry PA Decl. ¶ 17. Plaintiff sought equitable relief enjoining 90 Degree Benefits from engaging in the wrongful conduct complained of and compelling 90 Degree Benefits to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. ECF No. 1; Perry PA Decl. ¶ 18. Plaintiff further sought an order requiring Defendants to provide credit monitoring services to themselves and the rest of the Class. ECF No. 1; Perry PA Decl. ¶ 19. Finally, Plaintiff sought an award of actual, compensatory, and statutory damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. ECF No. 1; Perry PA Decl. ¶ 20. Soon after filing, the Parties agreed that it would be beneficial to explore opportunities for early resolution. Perry PA Decl. ¶ 21.

## C. Initial Negotiations

After meeting and conferring on multiple occasions regarding the potential for early settlement, the Parties agreed to mediate the case before the Hon. Wayne Andersen (Ret.). *Id.* ¶ 22. Hon. Wayne Andersen (Ret.) is a retired federal judge and respected JAMS mediator with extensive experience in class action mediation generally and data breach mediations in particular. *See*, *id.* ¶ 23. The mediation proceeded via ZOOM Video Conference on November 28, 2022. *Id.* ¶ 24. After a full day of arm's-length negotiations, and significant exchange of information through Judge Andersen, the Parties came to an agreement on the central terms of a settlement agreement.

*Id.* ¶ 25. On December 12, 2022, Counsel for Defendant notified the Court that a settlement had been reached in principle, and requested the Court set a deadline of January 27, 2022 to allow the Parties to prepare and execute the necessary settlement documents. *Id.* ¶ 26.

Over the next few weeks, the Parties diligently drafted and negotiated a term sheet designed to encapsulate all central terms of the settlement agreement. *Id.* ¶ 27. On January 24, 2023, Counsel for Defendant filed a request for a further extension on behalf of the Parties, up to and including February 24, 2022. *Id.* ¶ 28.

### D. A Second Breach

In approximately January or February of 2023, Counsel for Defendants notified Counsel for Plaintiff that 90 Degree Benefits had been the victim of a second data breach that occurred on or around December 5, 2022 through December 11, 2022 (the "December 2022 Incident"), and confirmed Plaintiff's information had again been impacted. *Id.* ¶ 29. As a direct result, on February 24, 2022, Plaintiff filed his Amended Complaint. *Id.* ¶ 30; ECF No. 19. The Amended Complaint included the same claims for relief as had been included in his original Complaint, but was expanded to include both the February 2022 Incident and the December 2022 Incident (collectively, the "Data Incidents"). *Id.*

### E. Renewed Negotiations

After Counsel for Defendant, upon information and belief, consulted with Hon. Wayne Andersen (Ret.), they reached out to Counsel for Plaintiff to explore the possibility of expanding the settlement to include both breaches. *Id.* ¶ 31. Counsel for Plaintiff required additional information regarding the scope of the breach in order to further negotiate the settlement. *Id.* ¶ 32.

The information took some time to gather, but Defendant eventually provided it, confirming that 185,461 individuals had been impacted by at least one of the combined Data Incidents, and that the same or similar information that was impacted by the February 2022

Incident was impacted by the December 2022 Incident. *Id.* ¶ 33. Renewed settlement negotiations began between the Parties, and continued for the next few months. *Id.* ¶ 34. Counsel for Plaintiff negotiated a proportional increase in the overall settlement fund, as well as a significantly increased alternative cash payment, residual credit monitoring, and residual cash payments. *Id.* The Parties reached an agreement on the new central terms in or about April 2023. *Id.* ¶ 35.

On April 21, 2023, Plaintiffs Steven Greek and John Boyajian filed a Complaint against Defendants in the United States District Court for the Eastern District of Wisconsin, captioned as *Steven Greek et al. v. 90 Degree Benefits, Inc. et al.*, Case No. 2:23-cv-00511 (the "*Greek* Action") asserting claims relating to the December 2022 Incident. *Id.* ¶ 36. On May 3, 2023, Plaintiff Jenny Olmstead filed a Complaint against Defendants in the United States District Court for the Eastern District of Wisconsin, captioned as *Jenny Olmstead et al v. 90 Degree Benefits – Wisconsin (f/k/a EBSO, Inc.)*, Case No. 2:23-cv-00564 (the "*Olmstead* Action") asserting claims relating to the December 2022 Incident. *Id.* ¶ 37.

Following further negotiations with Defendant, and with counsel for Plaintiffs Greek, Boyajian, and Olmstead, the Parties were able to come to a final agreement on the terms of the settlement. *Id.* ¶ 38. The *Greek* Action and the *Olmstead* Action were voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41 on or about June 1, 2023 and May 31, 2023, respectively. *Id.* ¶ 39.

The final Settlement Agreement ("Agr.") was fully executed on July 17, 2023, and is attached in full to the Perry PA Decl., ECF No. 25-1. The Settlement was preliminarily approved on July 21, 2023. On October, 3, 2023 Plaintiff filed his Motion for Attorneys' Fees, Costs, and Service Awards, a corrected version of which was filed on October 17, 2023.

## III.    THE SETTLEMENT

### A.    The Settlement Class

The proposed Settlement Class, approved for settlement purposes by the Court on July 21, 2023 is defined as:

> All individuals who were notified by 90 Degree Benefits of the cyberattacks perpetrated against 90 Degree Benefits on or around January 28, 2022 through February 28, 2022 and December 5, 2022 through December 11, 2022.

ECF No. 26. The Settlement specifically excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline. *Id*. ¶ 43.

The Settlement Class is comprised of approximately 183,329 individuals. Azari Dec. ¶ 11.

### B.    Settlement Benefits

The Settlement negotiated on behalf of the Class provides for the creation of a non-reversionary common fund in the amount of $990,000. *Id.* ¶ 45. The fund is structured to cover both cash benefits and credit monitoring services for valid claimants, as well as the costs of notice and administration, and court approved attorneys' fees, costs, and service awards. *Id*. From the fund, Settlement Class Members can claim one of two categories of relief. First, Class Members can claim up to $5,000 in reimbursements for out-of-pocket monetary losses, including compensation for up to three hours of lost time at $25 per hour and one year of three-bureau credit monitoring services. *Id.* ¶ 46. Or, in the alternative to the first category of relief, Settlement Class Members can make a claim for cash payment of up to $50. *Id.* ¶ 47. And finally, the Settlement

Agreement requires Defendants to provide confirmatory discovery regarding significant data security enhancements it has put in place since the Data Incidents. *Id.* ¶ 60.

Any funds remaining in the Settlement Fund after payment of valid claims, purchase of credit monitoring, payment of notice and administration costs, and payment of court-approved attorneys' fees, costs and Plaintiff service awards will be used, to the extent practical, to purchase: first, up to a total of five years of credit monitoring services for Settlement Class Members who made a claim for credit monitoring services ("Residual Credit Monitoring Services"); and second, a payment of up to $100 to each Settlement Class Member who submitted a valid claim ("Residual Cash Payment"). *Id.* ¶¶ 55–57.

### C.    Release

The release in this case is tailored to the claims that have been plead or could have been plead in this case. *Id.* ¶ 61. Settlement Class Members who do not exclude themselves will release any and all claims arising from the Data Incidents and/or the recordkeeping or data security practices in place at the time of the Data Incidents. *Id.* ¶ 62.

### D.    Class Representatives' Service Awards, and Attorneys' Fees and Costs

The Settlement Agreement calls for a reasonable service award to the Class Representatives in the amount of $2,500 per Class Representative. Perry PA Decl. ¶ 78. The Class Representatives—Fernandez, Boyajian, Greek, and Olmstead—have given their time and accepted their responsibilities admirably, participating actively in this litigation as required and in a manner beneficial to the Class generally, including: participating in client interviews, publicly attaching their names to the lawsuit, maintaining contact with counsel, assisting in the investigation of the case, reviewing Complaints, remaining available for consultation throughout settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions. *Id.* ¶

79. Service awards much greater than those sought here are regularly approved by Seventh Circuit courts. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06–698–GPM, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015), ECF No. 201 (awarding $20,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013), ECF No. 243 ¶ 20 (awarding $30,000 in incentive awards)The Service Award was negotiated only after agreement was reached on the benefits to be made available to the Settlement Class. *Id.*

Pursuant to the Settlement Agreement and by separate motion, Class Counsel sought $31,018.93 in reasonable out-of-pocket expenses including filing fees, service charges, and mediation costs, they seek only the remaining $298,981.07 in fees. *See* Declaration of Danielle L. Perry in Supp. of Pl.'s Mot. for Attorneys' Fees, Costs and Service Awards ("Perry Fees Dec.") at ECF No. 29, ¶ 20. The requested fees represent: (1) only 30% of the common fund established for the Class; (2) 37% of the common fund minus expenses; and (3) are well within the range of fees approved by Seventh Circuit Courts. *See See Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, inter alia, "the sum of 36% of the first $10 million"); *In re Cap. One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, No. 2017-cv-01307 (N.D. Ill. Aug. 8, 2019), ECF No. 173 (approving 35% of the settlement fund); *Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.C.*, 212

F.R.D. 400, 412 (ED. Wis. 2002) (approving fees at 30% of the common fund, *plus* costs and interest); *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of class settlement fund exclusive of expenses, administration costs, and service award); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 501 (N.D. Ill. 2015) (36% of class settlement fund exclusive of notice/admin costs and service award); *Vergara v. Uber Techs., Inc.*, 15–cv–6942 (N.D. Ill. Feb. 26, 2018), ECF No. 111 at 3–4 (awarding 36% of first $10 million of settlement fund exclusive of expenses, administration costs, and service award); *Bickel v. Sheriff of Whitley Cnty.*, No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund); *In re Forefront Data Breach Litigation*, 2023 WL 6215366 (slip op.) (E.D. Wis. March 22, 2023) (approving attorneys' fees of 41% of the fund after deduction of expenses). Notably, the Parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until they had reached an agreement on Class relief. Perry Fees Decl. ¶ 25.

## IV.   COURT APPROVED NOTICE PROGRAM AND CLASS RESPONSE

On July 21, 2023, the Court approved the Notice Plan and appointed Epiq Class Action and Claim Solutions, ("Epiq") as the Settlement Administrator. ECF No. 26.

### A.   CAFA Notice was Completed.

On July 28, 2023, Epiq sent 57 CAFA Notice Packages ("CAFA Notice") as required by the federal Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715. Azari Dec. ¶ 9. The CAFA Notice was sent via United States Postal Service ("USPS") Certified Mail to 55 officials, which included the Attorneys General of 49 states, the District of Columbia, and the United States Territories. *Id.* As per the direction of the Office of the Nevada Attorney General, the CAFA Notice was sent to the Nevada Attorney General electronically via email. *Id.* The CAFA Notice was also sent via United Parcel Service ("UPS") to the Attorney General of the United States. *Id.* Details regarding the CAFA Notice mailing are provided in the Declaration of Kyle S. Bingham on

Implementation of CAFA Notice, dated July 28, 2023, which is included as Attachment 1 to the Azari Declaration, filed herewith.

**B. Class Members Were Sent Direct and Individualized Notice**

On August 2, 2023, Epiq received one data file with 187,021 records for identified Settlement Class Members, including names and addresses and additional data as available ("Settlement Class List"). *Id.* ¶ 11. Epiq deduplicated and rolled-up the records and loaded the unique, identified Settlement Class Member records into its database., resulting in 183,329 unique, identified Settlement Class Member records. *Id.* Epiq then sent the 183,329 records to Transunion, who performed address updates and identified the most likely current physical mailing address for the Settlement Class Member records, ultimately updating 14,723 physical addresses. *Id.* Prior to sending the Short Form Notices, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information was up-to-date and accurately formatted for mailing. *Id.* ¶ 13. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. *Id.* This address updating process is standard for the industry and for the majority of promotional mailings that occur today. *Id.* Ultimately, 3,946 records had missing address information or partial names and could not be sent Notice. *Id.* ¶ 11. As a result, 179,383 unique, identified Settlement Class Members were sent a Postcard Short Form Notice ("Short Form Notice") via United States Postal Service ("USPS") first-class mail. *Id.*

The Short Form Notice, available at Attachment 2 to the Azari Declaration filed herewith, clearly and concisely summarized the case, the Settlement, and the legal rights of the Settlement Class Members. *Id.* ¶ 12, Att. 2. It also directs Settlement Class Members to the Settlement Website for additional information. *Id.*

Short Form Notices returned as undeliverable were re-mailed to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired but was still within the time period in which the USPS returned the piece with the address indicated), or to better addresses that were found using a third-party address lookup service. *Id.* ¶ 14. Upon successfully locating better addresses, Short Form Notices were promptly remailed. *Id.* As of October 16, 2023, Epiq has remailed 15, 242 Short Form Notices. *Id.*

Additionally, a Claim Package (Long Form Notice and Claim Form) was mailed to all persons who requested one via the toll-free telephone number or other means. *Id.* ¶ 15. As of October 16, 2023, Epiq mailed 214 Claim Packages as a result of such requests. *Id.* The Long Form Notice and Claim Form are filed as Attachments 3 and 4 to the Azari Declaration.

In all, Epiq estimates that direct and individual notice reached 95% of Settlement Class. *Id.* ¶ 16.

### C. Settlement Website

On August 17, 2023, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.90dbSettlement.com). *Id.* ¶ 17. Relevant documents, including the Long Form Notice (in English and Spanish), Claim From, Settlement Agreement, and Preliminary Approval Order, are posted on the Settlement Website. *Id.* The Settlement Website also provides the ability for Settlement Class Members to file an online Claim Form. *Id.* In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* The Settlement Website address was prominently displayed in all notice documents. *Id.* As of October 16, 2023, there have been 2,601 unique visitor

sessions to the Settlement Website, and 14,406 web pages have been presented. *Id.* ¶ 18.

**D.  Toll-Free Number and Post Box**

On August 17, 2023, Epiq established a toll-free telephone number (1-877-203-8169) for the Settlement. *Id.* ¶ 19. Callers are able to hear an introductory message and also have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package be mailed to them. *Id.* This automated phone system is available 24 hours per day, 7 days per week. *Id.* Callers also have the option to speak with a live service agent during normal business hours (English and Spanish). *Id.* The toll-free telephone number was prominently displayed in all notice documents. *Id.* As of October 16, 2023, there has been 915 calls to the toll-free telephone number representing 6,584 minutes of use, and service agents have handled 539 incoming calls representing 4,686 minutes of use, and 74 outgoing calls representing 211 minutes of use. *Id.*

A postal mailing address and email address were established, providing Settlement Class Members with the opportunity to request additional information or ask questions, which Epiq responds to directly via USPS first class mail or email. *Id.*

**E.  Requests for Exclusion and Objections**

The deadline to request exclusion from the Settlement or to object to the Settlement is October 17, 2023. *Id.* ¶ 21. As of October 16, 2023, Epiq has received six requests for exclusion. As of October 16, 2023, Epiq is not aware of any objections to the Settlement. *Id.* ¶ 21.

**F.  Claims and Distributions**

The deadline for Settlement Class Members to file a claim is November 16, 2023. *Id.* ¶ 23. With any method of filing a Claim Form, Settlement Class Members have the option of receiving a digital payment or a traditional paper check. *Id.* ¶ 22. As of October 16, 2023, Epiq has received 2,328 Claim Forms (2,277 online and 51 paper). *Id.* ¶ 23. Since the November 16, 2023,

claim filing deadline has not yet passed, these numbers are preliminary. *Id.* By that deadline, the expectation is that additional claims will have been filed by Settlement Class Members. *Id.* As standard practice, Epiq is in the process of conducting a complete review and audit of all Claim Forms received. *Id.*

## V.     FINAL APPROVAL IS WARRANTED

### A.     The Settlement Approval Process

As the Seventh Circuit recognizes, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, be impracticable. Indeed, as one Court in District previously observed:

> [T]he law recognizes class actions as a legitimate part of the U.S.
> litigation system. The Supreme Court has made this clear on several
> occasions. *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102
> S.Ct. 2364, 72 L.Ed.2d 740 (1982) (explaining that, in appropriate
> cases, "the class action device saves the resources of both the courts
> and the parties by permitting an issue potentially affecting every
> class member to be litigated in an economical fashion under Rule
> 23"); *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S.
> 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Where it is not
> economically feasible to obtain relief within the traditional
> framework of a multiplicity of small individual suits for damages,
> aggrieved persons may be without any effective redress unless they
> may employ the class-action device."). In addition, Federal Rule of
> Civil Procedure 23 provides for the use of such a procedure.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 497 (N.D. Ill. 2015) (quoting *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 982 (N.D. Ill. 2011) (St. Eve, J.)). For these reasons, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT & T Mobility Wireless Data Services Sales Lit'n*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination. Specifically, counsel submit the proposed terms of settlement to the district court, along with

"information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.25 (4th ed. 2002).

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; Fed.R.Civ.P. 23(e)(1)(B) (2018). This Court has found that the Settlement meets the above criteria. ECF No. 26.

-15-

The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2) (2018); *also Manual for Complex Litigation*, § 21.633-34; *In re Northfield Labs., Inc. Sec. Litig*., No. 06 C 1493, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members.").

The first step in this process—which requires front-loaded scrutiny of the settlement— has occurred. With this Motion, Plaintiff respectfully requests that the Court take the second and final step in the process by granting final approval of the Settlement.

**B.  The Notice Provided Met Requirements of Due Process and Rule 23**

Neither Rule 23 nor due process requires that every class member actually receives notice. Instead, "notice suffices if it is reasonably calculated to reach the absent parties." 3 William B. Rubenstein, *Newberg on Class Actions* § 8:36 (5th ed. 2011) (updated 2021). According to the Federal Judicial Center ("FJC"), notice to at least seventy percent of the class generally meets this standard. See Fed. Judicial Ctr., Judges' Class Action Notice And Claims Process Checklist And Plain Language Guide 3 (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last accessed May 22, 2022).  The notice of a proposed settlement should provide class members with all the information they need to make an informed decision to file a claim, opt out, or object. *See generally Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[A] fully descriptive notice ... sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process."); *see also Kaufman v. American Express Travel Related Services Company*, 877 F. 3d 276, 284 (7th Cir. 2017). Here, the Notice provided to the Settlement Class, by mail and as available on the Settlement Website, clearly and concisely provides Settlement Class Members with all the information they need to make a claim, object, or opt out of the class. Moreover, the 95% reach of Notice here clearly meets the standard set forth by the FJC.

Approximately one month prior to the claims deadline in this case, Class Members have

already submitted 2,328 claims – representing an approximate 1.3% of the class. Such a claims rate falls well in line with, and even exceeds, other consumer and data breach class action settlements, in the Seventh Circuit and elsewhere. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. 2015) (approving settlement class when less than 1% of class members filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving class action settlement when approximately 1.1% of the class filed claims); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with approximately 1% claims rate); *Kenney et al v. Centerstone of America, Inc., et al.,* No. 3:20-cv-01007 (M.D. Tenn. Aug. 9, 2021) (granting final approval of data breach class action settlement with .91% claims rate); *Heath et al. v. Insurance Technologies Corp et al.,* No. 3:21-cv-01444-N (N.D. Tex. Jan. 4, 2023) (approving data breach class action settlement with a .44% claims rate).

### C. <u>The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved</u>

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination at the final approval stage, courts in this Circuit have historically considered the following factors:

> (1)    the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2)    the likely complexity, length, and expense of continued litigation;
>
> (3)    the amount of opposition to settlement among affected parties;
>
> (4)    the opinion of competent counsel; and
>
> (5)    the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199; *accord Holmes v. Roadview, Inc.*, No. 15-CV-4-JDP, 2016 WL 1466582, at

*4 (W.D. Wis. Apr. 14, 2016); *see also TikTok, Inc., Consumer Privacy Litigation*, 617 F. Supp. 3d 904, 933 (N.D. Ill. July 28, 2022). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *In re: Sears, Roebuck & Co. Front-loading Washer Products Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (citing *Armstrong*, 616 F.2d at 315).

Application of these factors here confirms that the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Settlement Provides Substantial Relief When Measured Against the Strength of the Plaintiffs' Case

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

#### a. Diverse and substantial legal and factual risks weigh in favor of settlement.

While Plaintiff and Class Representatives strongly believe in their claims, they understand that Defendants assert a number of potentially case-dispositive defenses. Here, Defendants maintained several defenses that, if successful, would have eliminated Plaintiff's claims entirely. For example, should litigation continue, Plaintiff would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial

hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and class members can have a chance at relief.

Plaintiff disputes the defenses Defendants are likely to assert, but it is obvious that the likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

> ### b. The monetary terms of this Settlement fall within the range of related privacy class action settlements.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement

"solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise").

The estimated settlement value of $5.40 per class member here, exceeds that of many other privacy class action settlements that courts have approved. For example, *Sony Gaming Networks*, No. 3:11-md-02258 (S.D. Cal.) Dkt. 204-1 at 6-10, which concerned the disclosure of Sony PlayStation account holder information for 77 million class members, settled for $15 million, or approximately $.19 per class member. *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016), which involved the alleged misappropriation of 146 million class members' personal data, settled for $20 million, or approximately $.13 per class member. *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 942–44 (N.D. Cal. 2013), aff'd sub nom; *see also Google Cookie*, No. 1:12-md-02358 (D. Del. June 12, 2012) (~$.055 per class member); *Google Referrer Header*, No. 5:10-cv-04809 (N.D. Cal., Oct. 25, 2010) (~$.085 per class member).

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in early informal discovery efforts to prepare for mediation, continued litigation would involve extensive motion practice, including motions to dismiss, motions for summary judgment, motions for class certification, and ultimately a trial on the merits. Further, it is likely to be late 2024 or early 2025 before the case would actually proceed to trial. And, any judgment in favor of Settlement Class Members could be further delayed by the appeal and certiorari petition process, which would likely include a Due Process challenge. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

This factor favors settlement approval.

### 3. There Has Been No Opposition to the Settlement.

As of the date of filing, there have been *zero objections* to the settlement, and only six requests for exclusion. In a class totaling 183,329 people, where direct and individualized notice is estimated to have reached 95% of class members, the non-existent objections and low number of requests for exclusion serve as a strong endorsement of the settlement. Moreover, the current claims rate of 1.3%, with a month still remaining in the claims period, is further sign of the strength of the settlement.

### 4. Class Counsel Strongly Endorse the Settlement.

Class Counsel and the Class Representatives strongly endorse this Settlement. Their opinion on the Settlement, and particularly the opinion of Class Counsel is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar privacy class action cases); (2) Class Counsel engaged in significant investigation and discovery and exhaustively evaluated the claims in the context of settlement negotiations; and (3) the Settlement was reached at arm's length through negotiations by experienced counsel, after a full day mediation session, which was preceded by multiple rounds of mediation briefing beforehand, before Hon. Wayne Andersen (Ret.) of JAMS, with many additional weeks of contentious negotiations between the parties following the mediation. *See generally,* Perry PA Dec.; *see also McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval"); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of

approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval.

The Settlement was informed by Class Counsel's analysis of the factual and legal issues involved in the case. Perry PA Dec. ¶¶ 10-13, 21-42. Class Counsel possess the discovery necessary to confirm that the Settlement is fair, reasonable, and adequate. *Id.* ¶ 84.

Settlement negotiations, likewise, were hard-fought. They included a mediation session before Hon. Wayne Andersen (Ret.) of JAMS, before which the Parties exchanged informal discovery and briefed the claims and defenses at issue. *Id.* ¶ 22-24. Even after mediation, the Parties exchanged numerous communications regarding terms, and engaged in significant renegotiations following a second breach, as well as discussions with counsel for Class Representatives Olmstead, Greek, and Boyajian. *Id.* ¶¶ 26-42. The settlement was negotiated at arm's length by vigorous advocates, and there has been no fraud or collusion.

Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through plaintiff investigations, informal discovery, and numerous, contentious arm's-length negotiations. This factor thus supports final approval of the Settlement. *See Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

### 6. The Settlement is Reasonable in Light of the Requested Attorneys' Fees.

When determining whether a proposed settlement is reasonable, the Seventh Circuit has instructed district courts to "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768

F.3d 622, 630 (7th Cir. 2014).

As Counsel describe in their fee petition originally filed on October 3, 2023 (the corrected version of which was filed on October 17, 2023), federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in class action settlements. *Great Neck Capital Appreciation Inv. Partnership, L.P. v. PreicewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. Nov. 6, 2022) (applying the percentage-of-the-fund approach to award fees at 30% of the value of the fund, plus expenses); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wis. Dec. 21, 2009) (applying the percentage-of-the-fund approach to award fees at 30% of the total value of the fund).

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY,*

*Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman*, 768 F.3d 622, 630 (7th Cir. 2014)).

Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631. Here, Plaintiffs' counsel have requested the lower end of the fee spectrum: an award of 30%. This amount falls squarely in line with other approved class settlements. *See, e.g., Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund). *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming fee award in TCPA class action that included, inter alia, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (same); *see also Kolinek*, 311 F.R.D. at 501 (awarding 36% of net settlement fund); *Martin v. JTH Tax, Inc.*, No. 13-cv-6923, Dkt.85 (N.D. Ill. Sept. 16, 2015) (awarding 38 % of net settlement fund).

Plaintiffs' counsel achieved an excellent result for the Class after undertaking substantial risk in prosecuting this novel action on a pure contingency basis, and they should be fairly compensated. Thus, the Settlement is reasonable in light of this factor.

**D.      The Requested Service Awards are Lower than the Amounts Available to any Valid Claimant.**

Incentive awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become

named representatives.").

The requested incentive awards of $2,500 each for the Class Representatives are reasonable. Plaintiff and Class Representatives worked with Counsel to investigate the case, responded to Counsel's inquiries, were kept abreast of the proceedings, and reviewed and approved the proposed settlement. Moreover, the amount requested is reasonable, particularly when compared to other awards approved by courts in this District and elsewhere. *See, e.g.*, *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-cv01908-TWP-TAB, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection). Moreover, each and every Class member can submit a claim for two-times the requested service award. As such, the Service Awards are reasonable and do not weigh against approval of the class action settlement.

### E.   The Settlement Class Should be Finally Certified.

In the Preliminary Approval Order, the Court conditionally approved certification of the Settlement Class. *See* ECF No. 26. For all the reasons set forth in Plaintiff's preliminary approval briefing (ECF No. 24), the Preliminary Approval Order (ECF No. 26), and described above, the Court should certify the class and finally approve the Settlement.

## VI.   CONCLUSION

The Settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiff respectfully requests that the Court grant final approval to the Settlement.[3]

---

[3] To the extent more or different data is available, Plaintiffs will submit an updated Notice and

October 17, 2023                    Respectfully Submitted,


                                   */s/ Danielle L. Perry*
                                   Danielle L. Perry
                                   Gary E. Mason
                                   Lisa A. White
                                   **MASON LLP**
                                   5335 Wisconsin Ave. NW, Ste. 640
                                   Washington, DC 20015
                                   Tel.: 202.429.2290
                                   dperry@masonllp.com
                                   gmason@masonllp.com
                                   lwhite@masonllp.com


                                   *Attorneys for Plaintiff & the Putative Class*



## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2023, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all Counsel of record.


                                   By:  */s/ Danielle L. Perry*
                                        Danielle L. Perry

---

Administration Declaration by November 2, 2014, the deadline to file any replies in support of final approval.